Moss, Judge,
delivered the opinion of the court:
On November 9, 1914, plaintiff entered into a contract with the United States Government for the construction of the battleship Idaho for the sum of $7,250,000. The ship was to be completed and delivered on or before November 9, 1917, or thirty-six months after the date of the contract. It was actually completed and delivered on March 24, 1919. Delays, experienced from time to time, were made the basis of applications for extension of time, and upon due consideration these applications were granted by the Government and the delivery date made to extend to the date of the completion and delivery of the ship. Payment of the full amount of the contract price, less a reserve of $100,000, together with a payment of $650,520.76 for additional cost on account of changes in the drawings, plans, and specifications had been made from time to time in accordance with the terms of the contract. Thereafter plaintiff was notified that after deducting the cost of cei’tain defects from the reserve fund of $100,000 there was due plaintiff the sum of $52,909.93. Plaintiff refused to accept same in full settlement, and this amount is admittedly due.
Plaintiff is suing to recover on three items: (1) Overtime wages paid by plaintiff; (2) increase in wages by direction of the Secretary of the Navy under a decision of the shipbuilding labor adjustment board; and (3) overhead claimed by reason of increase of proportion of overhead applying to the Idaho.
These will be considered in the order stated. On March 24, 1917, a telegram was sent to plaintiff by the Secretary of the Navy, which reads as follows:
“ Under authority contained last naval bill, President will suspend eight-hour law as applying to naval contracts in such cases as will result in expedition of work. Wire statement of contracts that you can expedite and to what extent by reason of such suspension. Department suggests question of change of cost be settled as a change under the contract.”
Plaintiff replied, “Answering your telegram of yesterday, all Government contracts at this yard can be expedited by the suspension of the eight-hour law. The extent of this *480 can not be determined until the work is undertaken. We do not think that the cost of overtime and speeding up can be treated as a change under the contract.”
No agreement being reached as to the method of adjustment of the cost of overtime, plaintiff notified the superintending constructor and inspector of machinery in writing on March 31,1917, that overtime work would begin on April 2, 1917, and that a daily account would be rendered showing the number of hours per day for each man employed over eight hours, and stated, “ This method will be followed pending arrangements with the department.” In accordance with this proposal, plaintiff continued thereafter to employ overtime and to furnish reports on overtime work until January 18,1918, when same was discontinued at the suggestion of the superintending constructor. It is the contention of defendant that the overtime work on the Idaho was performed voluntarily by plaintiff, and with full knowledge that no extra compensation would be authorized or paid unless the completion of the vessel was expedited; and that instead of advancing the work on the Idaho, same was neglected and preference was given to other contracts. The record does not sustain this contention in any particular. The voluntary overtime work performed by plaintiff was in connection with the Colorado and the Washington, as appears from a report from the superintending constructor, in which it is stated, “ there is a small amount of overtime work in progress for the Colorado and the Washington * * *. No returns of this work are received, and I understand that no claim will be made for. extra compensation.” The clear inference is, and the record shows, .that returns were being received as to the cost of overtime on the Idaho. During the period from March 21, 1917, when overtime was authorized, until after the armistice, in November, 1918, the Government was engaged in the most gigantic navy program .the world has ever seen. The supreme demand was for ships. Plaintiff, as well as all other ship contractors, was being urged to advance the work under contract, and especially as to the Idaho, which was nearing completion. On April 13, 1917, Admiral Taylor, Chief of the Bureau of Construction and Repair, *481 wrote to the superintending constructor at plaintiff’s plant as follows:
“The department has approved the recommendation of this bureau that the superintending constructor be authorized to accept, pending final arrangements, the contractors’ reports on overtime work and that he be authorized to require such access to ,the contractors’ records as will enable him to verify their reports. Similar authority has been granted by the department to the inspector of machinery at the contractors’ works.” (Italics ours.)
On May 16, 1917, the Government, by memorandum of the Acting Secretary of the Navy, adopted a fixed general policy in regard to overtime on Navy work in approving overtime in all cases where contractors had “ been given to understand that employment of men for more than eight hours a day * * * was left to their discretion, their action in the premises up to this time will be approved unless cogent reason should appear for contrary action,” and providing further that the extra cost of such overtime should be fixed by the boards on changes. It will be remembered that, at the inception of the overtime program, plaintiff had declined to accept defendant’s suggestion that the cost of overtime be settled as a change under the contract, and in accordance with its own proposal had continuously thereafter furnished daily reports of such cost. This plan having been explicitly approved on April 13,1917, by the Chief of Bureau of Construction and Repair was not altered in the least particular after the promulgation of the policy just mentioned, but was continued until the overtime work was suspended.
The record shows beyond question that the overtime work on the Idaho was performed with the understanding between the parties that plaintiff would be reimbursed therefor, the only question being the method of such reimbursement. The only conceivable basis for. defendant’s contention on this phase of the case is found in a letter dated April 2, 1917, from the inspector of machinery to the plaintiff, wherein it is stated:
“ It is understood that the Secretary of the Navy has taken this matter up orally with a representative of the contractors and informed him that absolutely no additional compensa *482 tion will be allowed unless the vessel is delivered before her contract time of completion,” to which plaintiff immediately replied that it had no knowledge of any such verbal communication. This letter was the occasion for a time of considerable confusion, but the whole course of subsequent events conclusively demonstrates that the Government had no intention of establishing such a policy, and, in fact, it did not do so. The inspector of machinery was undoubtedly misinformed on the question which was made the subject matter of his letter.
In connection with defendant’s contention that the work on the Idaho was delayed and neglected by plaintiff, and preference given to other work, argued in minute detail and at great length, the court can not refrain from expressing surprise that defendant’s counsel has seemed to ignore the fact that by a definite ruling of the Navy Department after the delivery of the vessel it was formally determined that the several delays attending the construction of the Idaho were “ beyond the cóntrol of the contractors ” and approving the recommendation made by the bureaus that the contract time for the date of completion of the Idaho be “ extended to the date of delivery, March 19191’’ The entire argument on the question of delays is therefore clearly irrelevant ; and the charge that preference was given to other work is not sustained by the evidence. The Government is- liable for the item of overtime. Payment of overtime was made at one and one-half times the regular wage, and in this case amounts to $201,924.14. .
On February 14,1918, the Shipbuilding Labor Adjustment Board, a duly established board with authority to adjust disputes which might arise concerning wages, hours, and working conditions of labor engaged in naval construction or repair, rendered a decision fixing a minimum rate of wage and fixing hours and conditions of labor for workmen in the Delaware Biver District, which included plaintiff’s shipyard. These rates, authorized by the Secretary of the Navy, effected a substantial increase in plaintiff’s wage expenditure, and were made retroactive to November 2, 1917. Answering plaintiff’s specific inquiry on the question of reimbursement the Secretary of the Navy stated that “ The *483 department expects to reimburse contractors for unavoidable increases of cost due to adoption of wage adjustment board scale. These matters to be treated as changes under fixed-price contracts. Submit increases to department for approval.” That the Secretary of the Navy had authority to reimburse contractors for wage increases put into effect at his instance was definitely determined by the decision of the United States Supreme Court in the recent case of E. W. Bliss Company v. United, States, decided December 12, 1927. Claims were submitted to the Navy Department, but no action on same was taken. The direct labor increases involved herein from and after February 14, 1918, amount to $468,613.70, and the retroactive increases amount to $146,-986.20. These amounts represent increases in wages put into effect by the Secretary of the Navy, and adopted and paid by the plaintiff. It appears, however, that plaintiff presented to the board on changes a claim in the sum of $147,108.00, and this sum included (1) nonretroactive increase in wages on changes, (2) retroactive increase in wages on changes, and (3) overhead. The record does not disclose the amount of each item. This claim was allowed in the sum of $120,522.55 which was paid and was disallowed as to the remainder. Inasmuch, however, as the claim was considered and acted on by the board whose action is final, the entire amount, $147,108.00, will be deducted from the aggregate of the two sums, $615,599.90. The remainder, $468,491.90, is the amount which plaintiff is entitled to recover on the item under discussion. Findings XNI and XXII.
The overhead expense claimed by plaintiff is not satisfactorily proved, and that item can not be allowed. • Finding XXIII.
In the latter part of 1916 plaintiff effected a reorganization of its company whereby plaintiff sold and transferred to the New York Shipbuilding Corporation, incorporated on November 29, 1916, the assets and property of plaintiff, and as to its contract with the defendant for the construction of the Idaho an agreement was entered into on December 12, 1916, between plaintiff and the New York Shipbuilding Corporation by which plaintiff agreed to hold said contract and all benefits therein exclusively in trust for said corpora *484 tion, and the corporation agreed to, and did thereafter carry on the construction of said vessel to its completion. Defendant was duly notified of this reorganization, and same was expressly approved, and the work was thereafter continued in accordance with said agreement, with no substantial change in the managing jiersonnel. The contention by defendant that plaintiff is not entitled to recover by reason of the foregoing transaction is not tenable.
Plaintiff is entitled to recover the sum of $723,325.97, and it is so ordered and adjudged.
GnAHAM, Judge; Booth, Judge; and Campbell, Chief Justice, concur.
GreeN, Judge, took no part in the decision of this case.